**UNITED STATES of America, Plaintiff-Appellant,**

v.

**AMERICAN WASTE FIBERS CO., INC., Defendant-Appellee,**

**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Mark SALTZMAN, Defendant-Appellee,**

Nos. 86–5043(L), 86–5057.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 14, 1986.

Decided Jan. 30, 1987.

Roy Theodore Englert, Jr., Dept. of Justice (Samuel T. Currin, U.S. Atty., Kieran Joseph Shanahan, Asst. U.S. Atty., on brief), for plaintiff-appellant.

Thomas K. Maher (David S. Rudolf, Beskind & Rudolph, P.A., Thomas K. McQueen, Jenner & Block, on brief), for defendants-appellees.

Before SPROUSE and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

PER CURIAM:

American Waste Fibers Co., Inc. (AWF) was indicted on six counts related to the theft of military property. Mark Saltzman, an employee, was also indicted. The only count of the indictment at issue here is Count I, which alleges that AWF and Saltzman violated 18 U.S.C. §§ 371 and 641 by conspiring to purchase stolen ammunition, food, and camping equipment. During the pendency of this appeal, all counts of Saltzman's indictment were dismissed pursuant to a plea agreement with the government. The indictment against AWF was not affected.

Before trial, AWF argued that Count I of the indictment should be dismissed for vagueness. The district court agreed. We reverse.

## I.

Count I of the indictment states that AWF and Saltzman conspired "with each other and with divers other persons known and unknown to the grand jury." It then describes nine overt acts of conspiracy, including the purchase and transport of 2,700 M–16 machine gun magazines, 305 cases of C-rations, 2,400 canteen covers, 3,350 tent stakes, and 960 rucksack liners. The goods were allegedly bought by Saltzman from

General Jackson's Surplus in Fayetteville, North Carolina; sent by Saltzman and AWF to Chicago, Illinois; and finally received in Chicago by AWF. Saltzman and AWF allegedly knew the goods were stolen from the military.

On April 7, 1986, the trial court dismissed Count I as to AWF. The trial court ruled that a conspiracy cannot exist between a corporation and a single employee, such as Saltzman, acting on its behalf. The court went on to rule that the indictment failed to name any other conspirators and hence did not allege a conspiracy offense. The reference to "divers other persons," which indicated that conspirators other than AWF and Saltzman were involved, was held to fail the clarity requirement of Fed.R.Crim.P. 7(c)(1).

## II.

Fed.R.Crim.P. 7(c)(1) requires that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The Fifth Amendment states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." The Sixth Amendment provides that the accused has the right "to be informed of the nature and cause of the accusation." The government argues that the indictment in this case is not vague and thus meets the requirements of Rule 7 and of the Fifth and Sixth Amendments. We agree.

The fact that the indictment refers to "divers other persons" rather than naming the co-conspirators does not automatically render the indictment invalid. *United States v. Indorato*, 628 F.2d 711, 717–18 (1st Cir.1980); *United States v. Kramer*, 711 F.2d 789, 796 (7th Cir.1983). The existence of the conspiracy, rather than the particular identity of the conspirators, is the essential element of the crime. *United States v. Davis*, 679 F.2d 845, 851 (11th Cir.1982). While two persons are necessary to constitute a conspiracy, "one person can be convicted of conspiring with

persons whose names are unknown." *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951). Indeed, giving the name of an unindicted co-conspirator in an indictment may be undesirable, as it impugns the person's name without giving him a chance to refute the allegations in court.

The only question before us, then, is whether the indictment as a whole is so vague that it violates defendants' rights. To answer this question, we look to the dual purposes of an indictment. First, an indictment apprises the accused of the charge against him so he can prepare his defense; second, an indictment enables the accused to plead the Double Jeopardy bar to reprosecution if he is later charged with the same offense. *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 1814, 85 L.Ed.2d 99 (1985); *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962).

The indictment in this case is sufficiently detailed to serve those purposes. It alerts AWF to the elements of the offenses by following the language of the statute and listing nine overt acts together with locations and dates. The listed acts include the purchase on three different occasions of specified quantities of stolen property from David Jackson of General Jackson's Surplus. Further acts include the transportation of specified quantities of stolen goods from Fayetteville, North Carolina to Chicago, Illinois as well as AWF's receipt of the goods in Chicago.

Such an indictment gives defense counsel adequate notice of the charges and is sufficient to allow defendants to plead it in another prosecution. It is therefore not surprising that a highly similar indictment was upheld by the First Circuit in *Indorato, supra*. In fact, an indictment that merely tracks the statutory language is ordinarily valid:

It is generally sufficient that an indictment set forth the offense in the words

of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'

*Hamling,* 418 U.S. at 117, 94 S.Ct. at 2907. *See also United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir.1986); *United States v. Lurz,* 666 F.2d 69, 78 (4th Cir.1981). In *Amend,* we recently upheld against a vagueness challenge an indictment that neither specified the acts that violated the cited statutes nor identified any of the five other persons whom defendant, to be guilty of a Continuing Criminal Enterprise, was required to manage, organize, or supervise. By comparison, the indictment in this case is a model of particularity.

 AWF claims nonetheless that the indictment does not provide enough information to enable it to prepare its defense. If so, AWF's proper course is to seek a bill of particulars. The indictment notifies AWF of the offenses with which it has been charged; the bill of particulars, if granted, serves to supply the evidentiary details needed to prepare a defense. *United States v. Duncan,* 598 F.2d 839, 848 (4th Cir.1979). *See also United States v. Freeman,* 619 F.2d 1112, 1118 (5th Cir.1980); *United States v. Haas,* 583 F.2d 216, 221 (5th Cir.1978); *United States v. Cole,* 755 F.2d 748, 760 (11th Cir.1985).

In this regard, the government has already identified David Jackson in open court as a co-conspirator. Whether AWF now possesses sufficient information to prepare a defense is, as always, a matter committed to the sound discretion of the trial court.

We note finally that an indictment need not be so detailed that it can, standing alone, bar a later prosecution. When a Double Jeopardy bar is claimed, the court must examine not just the indictment from the prior proceeding but the entire record. *Russell v. United States,* 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Roman,* 728 F.2d 846,

853–54 (7th Cir.1984); *United States v. Haldeman,* 559 F.2d 31, 126 (D.C.Cir.1976).

In sum, it is incorrect to require, as AWF appears to suggest, that the indictment must enumerate every possible legal and factual theory of defendants' guilt. The indictment returned by the grand jury against AWF was quite sufficient. The judgment of the district court in No. 86–5043 is therefore reversed and the case is remanded with directions to reinstate Count I of the indictment.

REVERSED AND REMANDED.